## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF NEW YORK

| | |
|---|---|
| **RLP VENTURES LLC** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action |
| ) | _____ |
| **ALL HANDS INSTRUCTION NFP** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff RLP Ventures LLC ("**Plaintiff**" or "**RLP Ventures**"), with knowledge as to its own conduct and upon information and belief as to the conduct of all others hereby complains against Defendant All Hands Instruction NFP ("**Defendant**" or "**All Hands**") as follows:

### SUMMARY AND NATURE OF THE ACTION

1.      This action seeks a decision on federal trademark infringement and unfair competition under the Lanham Act and trademark infringement and unfair competition under New York common law.  The Plaintiff is also seeking the cancellation of the Defendant's service mark registration.

## THE PARTIES

2.     Plaintiff RLP Ventures is a limited liability company existing under the laws of the State of New York with an address of  Times Square Station; P.O. Box 2605; New York, NY 10108.

3.     On information and belief, Defendant All Hands Instruction is a not-for-profit corporation organized under the laws of the State of Illinois with an address of 445 E. 42nd Street, Chicago, IL 60653.

## JURISDICTION AND VENUE

4.     This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and § 1125(c) and 28 U.S.C. § 1338(a) because this action arises under an Act of Congress relating to trademarks, as it involves Defendant's infringement of Plaintiff's federally registered trademark.

5.     This Court also has supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1338(b) over all non-federal claims, because they are related to the claims arising under federal law. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

6.     Personal jurisdiction over Defendant is proper pursuant to N.Y. C.P.L.R. § 302(a). On information and belief, Defendant has advertised and solicited business in the State of New York and this District through its website and promotional activities bearing the infringing mark. Further, on information and belief, Defendant has wrongfully caused injury to Plaintiff and its property in the State of New York and this District, and personal jurisdiction over Defendant is reasonable and comports with fair play and substantial justice.

**HISTORY; FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

A.     **The United States Trademark Trial and Appeal Board (TTAB) Proceedings**

7.     This action follows a cancellation proceeding before the TTAB (Cancellation No. 92062870).  In the decision, the TTAB held, among other things, that (A) Plaintiff's mark was "inherently distinctive for [Plaintiff's] entertainment and website services, (B) Plaintiff established a priority date of September 1998, (C)  Plaintiff's use of "the term 'extracurricular' [was] not … supported by the evidence of record" then-presented to the TTAB (some of the testimony was vague), (D) "[t]he marks are … similar in sight, sound, and commercial impression, and this *du Pont f*actor favors finding a likelihood of confusion, (E) "there [was] no evidence that consumers would expect these services to derive from a single source", and (F) although Plaintiff's "services are more generally oriented and may also include services for children and youth, … there is insufficient evidence to find that the channels of trade will overlap."

8.     On information and belief, the standard for review for the TTAB is a comparison of the cancellation petitioner's services with the services recited in the registrant's certificate of registration and the standard for review of the allegations herein are different.  For example, the review for a claim of infringement includes a comparison of the actual services of the parties.

9.     Plaintiff further asserts that there was and continues to be evidence that Plaintiff's mark and that the channels of trade overlap.  Accordingly, Plaintiff is seeking relief from this Court, as discussed in more detail below.

**B.  Plaintiff and the Origins of the MOSAEC Mark ("Plaintiff's Mark")**

10.     Plaintiff RLP Ventures is the owner and operator of a social media and e-commerce entity using the trademark "*MOSAEC*" ("**Plaintiff's Mark**").  The MOSAEC platform is a commerce, content, advertising and social media web environment that spotlights film, music, art, theater, dance, literature, fashion, sports and locales.   In addition, via the MOSAEC platform, Plaintiff sells consumer goods, buys and sells advertising, and seeks funding from individuals, corporations and governments. The platform was and continues to be targeted to youth and adults seeking information to evaluate, select and plan extracurricular activities.   It has also been used to advance personal, educational, and career goals and in schools for philanthropic purposes. Plaintiff's funding efforts for the MOSAEC platform have included seeking financial support from individuals and governments.   Since May 2014, the Plaintiff has been registered with SAM.gov for federal grants in support of the  MOSAEC platform.

11.     The use of the Plaintiff's Mark commenced as early as September 1998. The concept for the MOSAEC platform was developed during calendar years 1996 – 1998.  The MOSAEC-branded service was initially conceptualized in paper form and later transitioned to a digital format.  Aspects of the business plan and source code for the MOSAEC platform were developed by Plaintiff during calendar years 1996 – 1999 during courses Plaintiff's owner took at New York University and other schools.  The courses included, for example, Fundamentals in Electronic Commerce, Magazine Advertising Sales and Marketing, Magazine Editing and Editorial Management Circulation Management Launching a Magazine, Publishing Online, Newsletter Publishing Internet Journalism, and Magazine Publishing.

12.     The MOSAEC platform was released first in a "beta" form during the fall of 1998 (***Exhibit A)***, attached hereto and incorporated herein by reference, shows a screenshot of one of the "beta" webpages).  The beta version of the website was used, in part, to recruit talent, seek funding, and sell ads.  The "gamma" version of the platform was launched in the spring of 1999.  Since its 1999 launch, the MOSAEC platform has been accessible throughout the United States (including, without limitation, in Illinois - the apparent base of operations for Defendant) and internationally, with users engaging with the platform's content and purchasing its consumer goods.  Contributors to the MOSAEC platform have resided throughout the United States, including in Illinois.  Plaintiff recruited MOSAEC platform contributors who were youth and adult students and who expressed an interest in the fields of journalism and/or entertainment.   Through the use of the MOSAEC platform, consumer goods have been distributed to its users and contractors (including residents of Chicago, IL).   ***Exhibit B,*** attached hereto and incorporated herein by reference, shows a present-day webpage of the MOSAEC platform.

13.     Plaintiff built the MOSAEC platform from the ground up, investing substantial amounts of time and money.  With great effort, Plaintiff has continued to operate the MOSAEC platform through market downturns (2001 and 2009).

14.     Since the adoption of Plaintiff's Mark, the MOSAEC platform has been used and accessed by a notable number of users.  For example, since 2008, there have been over 750,000 YouTube views of videos incorporating the MOSAEC brand in connection with Plaintiff's services.  Since 2009, there have been over 142,000 likes recorded in connection with the Facebook presence associated with the MOSAEC

platform.  On Twitter, since 2009, the MOSAEC platform's page has garnered over 8,900 followers - including film studios, television studios, public relation agencies, talent and crewmembers.  Branded tweets have been retweeted by Tribeca Film Festival, which has over 204,000 followers; tweeted by Michael Skolnik (@MichaelSkolnik), who has over 269,000 followers and retweeted by Brad Gilbert (@bgtennisnation), who has over 139,000 followers.  The LinkedIn presence for the MOSAEC platform has been in existence since 2009 and an Instagram presence has been in existence since 2015.  Within the Google environment, the term "MOSAEC" has been a part of over 5,700 search results.

**C.** **Defendant and the Latter Adoption of the Confusing Similar MOSAYEC Term (the "Allegedly Infringing Mark")**

15.    On information and belief, Defendant, through its MOSAYEC-branded website, provides, among other things, "a safe place for students to create and keep their own records of involvement with extracurriculars".  ***Exhibit C,*** attached hereto and incorporated herein by reference, shows, on information and belief, a previous iteration of a webpage containing a discussion regarding the MOSAYEC website.

16.    On information and belief, the principal of Defendant - Jerome Green (**"J. Green"**), who it is believed had prior knowledge of the MOSAEC platform and its operations, is the current executive director of Defendant.

17.    On information and belief, Defendant solicits donations using its term MOSAYEC (school fundraising efforts) in a similar fashion as Plaintiff solicits donations using Plaintiff's Mark.  ***Exhibit D***, attached hereto and incorporated herein by reference,

a webpage that shows Defendant's term used in connection with charity activity (see, for example, the URL for the webpage is: https://www.indiegogo.com/projects/all-7-making-afterschool-scholarships-possible#/).

18.     On information and belief, Defendant's term MOSAYEC is used in connection with services for youth and adults that are within the group targeted by Plaintiff prior to the use of the Allegedly Infringing Mark and concurrent with such use.

19.     On information and belief, Defendant has, for example, used its MOSAYEC term in Louisiana in connection with educational activities (see for example, https://www.linkedin.com/pulse/deep-bayou-diving-my-own-assumptions-jerome-green/?trk=prof-post - showing the use of the Allegedly Infringing Mark).  Plaintiff also engaged in MOSAEC activities in Louisiana prior to the initiation of Defendant's activities (see, for example, http://www.mosaec.com/backtalk_disappear.htm and https://mosaec.com/levees-broke-requiem-four-acts-2006-240-minutes-not-rated/- showing the use of the MOSAEC brand in connection with Plaintiff's coverage of events, programming and personalities in Louisiana).

**D.     Prior Communications Between The Parties**

20.     On information and belief, J. Green was aware that Plaintiff's Mark existed as a result of the availability of the MOASEC platform in Illinois and elsewhere.

21.     On or about April 10, 2015, prior to the registration of the Allegedly Infringing Mark, Plaintiff sent the attorney of record for Defendant's service mark application a cease and desist letter – see ***Exhibit H*** (attached hereto and incorporated herein by reference).

22.     By emails dated, April 27, 2015 and May 4, 2015, Plaintiff contacted the Trademark Assistance Center at the USPTO to determine the procedure to request cancellation prior to registration of the Allegedly Infringing Mark.

23.     On or about April 30, 2015, Plaintiff sent the attorney for Defendant a second letter and email reiterating Plaintiff's position – see ***Exhibit I*** (attached hereto and incorporated herein by reference).

24.     On or about May 7, 2015, Plaintiff received a letter dated April 16, 2015 from Defendant's attorney, in which the attorney indicated that the Defendant did not copy the Plaintiff's platform – see ***Exhibit J*** (attached hereto and incorporated herein by reference).

E.     **Prosecution In The United States Patent And Trademark Office (USPTO)**

25.     On or about April 3, 2015, Plaintiff filed a use-based (Section 1(a)) application for the registration of Plaintiff's Mark in International Class 41 covering services in connection with which the Plaintiff's Mark is used (see ***Exhibit E***, attached hereto and incorporation).   Notable in the list of services, among others, are the following:

> "***Providing a website featuring information in the fields of education and entertainment for children***;"

> "***Providing a website that displays rankings of entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance & restaurants based on social media for entertainment purposes***;"

> "***Providing advice and information in the field of educational and entertainment activities and events for children;***"

> "*Providing information relating to educational and entertainment activities and events for children;*" and
>
> "*Provision of information relating to children's entertainment*"

The date of first use given is as early as September 4, 1998.

26. On or about January 20, 2016, September 12, 2017 and November 3, 2017, Plaintiff filed amended list of services in connection with the aforementioned application International class 41 as follows:

> "*Entertainment services, namely, providing information by means of a global computer network in the fields of celebrities, entertainment, and popular culture;*"
>
> "*Entertainment services, namely, providing on-line reviews of entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, and dance;*"
>
> "*Providing a website featuring entertainment information in the field(s) of entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, and news;*"
>
> "*Providing information, news and commentary in the field of entertainment;*"
>
> "*Providing information, news and commentary in the field of r recreation and leisure activities;*" and
>
> "*Provision of information relating to children's entertainment.*"

Plaintiff's mark was federally registered on February 27, 2018.

27. Additionally, as of the date of the filing of this complaint, Plaintiff has (i) secured federal registration for its MOSAEC mark in international classes 42 43 and 45 as well as (ii) applied for federal registration of its MOSAEC mark in international classes 9, 16, 18 and 25, in connection with the following goods and services:

| Petitioner's Mark | Registration or US Serial No. | Good/Services (collectively, the "Petitioner's Goods and Services") | Registration or Application Date |
|---|---|---|---|
| MOSAEC | 87/226,106 | *Computer application software for desktop computers and mobile devices, namely, software for compilations, rankings, ratings, reviews, referrals and recommendations relating to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation and leisure activities; Computer application software for desktop computers and mobile devices, namely, software for entering, accessing and tracking data related to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation, leisure activities and social networking; Computer application software for desktop computers and mobile devices, namely, software for uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network; Computer application software for desktop computers and mobile devices, namely, software for displaying and sharing a user's location and finding, locating, and interacting with other users and places; Computer software to enhance the audio-visual capabilities of multimedia applications, namely, for the integration of text, audio, graphics, still images and moving pictures; Downloadable electronic newsletters in the field of entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation and leisure activities; Downloadable mobile applications for entering, accessing and tracking data related to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation, leisure activities and social networking; Computer e-commerce software to allow users to perform electronic business* | November 4, 2016 |

| | | *transactions via a global computer network;"* in Class 009. | |
|---|---|---|---|
| MOSAEC | 87/670,342 | *"Printed instructional, educational, and teaching materials in the field of foreign languages and cross-cultural communication; Fiction books on a variety of topics; Non-fiction books on a variety of topics,"* in Class 016. | November 2, 2017 |
| MOSAEC | 87/277,362 | *"All-purpose carrying bags; Backpacks; Tote bags; Wallets including card holders"* in Class 018. | December 21, 2016 |
| MOSAEC | 87/146,935 | *"Hats; Pants; Shirts"* in Class 025. | August 22, 2016 |
| MOSAEC | 87/469,079 | *"Fundraising services, by means of sharing profits from the sale of socially responsible products with not-for-profit organizations, schools, and civic groups; Charitable fundraising services for namely, raising funds to support programs related to engagement in entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, culinary, recreation and leisure activities; On-line business fundraising services;"* in Class 036. | May 31, 2017 |
| MOSAEC | 5,284,032 | *"Providing temporary use of a non-downloadable web application for posting, searching, accessing, sharing, and tracking reviews, ratings, referrals, recommendations, and other information as well as advertising, uploading photos, adding videos, finding, locating, and interacting with other users, related to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation and leisure activities;"* in Class 042. | September 12, 2017 |
| MOSAEC | 5,335,465 | *"Providing information in the field of temporary lodging and accommodations for travelers, namely, news, ratings, reviews and recommendations; Providing information, news and commentary in the field of dining;"* in Class 043. | November 14, 2017 |
| MOSAEC | 5,166,424 | *"On-line social networking services"* in | March 21, 2017 |

| | | Class 045. | |
|---|---|---|---|

28.     On information and belief (and as purported in the certificate of registration), the application for registration of "***MOSAYEC***" was filed on June 11, 2014. Thereafter, Defendant began to use the Allegedly Infringing Mark on September 13, 2014.  Although the registration lists the services as follows: "***providing temporary use of a web-based software for use by children and youth to evaluate, select, and plan extracurricular activities that advance personal, educational, and career goals***", Plaintiff asserts that the services rendered by Defendant using the Allegedly Infringing Mark are in actuality, confusingly similar to the services rendered by Plaintiff.  The class for which the Allegedly Infringing Mark is registered is International Class 42.   See ***Exhibit F***, attached hereto and incorporated herein by reference.

29.     On information and belief, Defendant also uses the Allegedly Infringing Mark in connection with social media and as part of the following domain names: MOSAYEC.ORG and MOSAYEC.COM (the second domain name redirects visitors to the site having the first domain name).  See ***Exhibit G***, attached hereto and incorporated herein by reference.

**F.     TTAB Cancellation Proceeding**

30.     As referenced above, Plaintiff commenced a cancellation proceeding before the TTAB seeking to have Defendant's federal registration of the Allegedly Infringing Mark cancelled.  The petition was filed on December 28, 2015.

31.   As also mentioned above, the TTAB rendered a decision stating, in part, that Plaintiff's MOSAEC mark and Defendant's Allegedly Infringing Mark MOSAYEC were "substantially similar in sight, sound, and commercial impression".  Plaintiff asserts that the TTAB erred in stating that "[Plaintiff] ha[d] not demonstrated that the parties' services are related or that they will travel through similar channels of trade", partly in light of the TTAB's notion that "[a]s for the channels of trade, both [Plaintiff] and [Defendant] offer their services via the web …. [but] [Defendant's] services are targeted 'for use by children and youth,' [Plaintiff's] services are more generally oriented and may also include services for children and youth".  Plaintiff respectfully asserts that TTAB incorrectly made a 'distinction without a difference' (in its comparison of Plaintiff's services to Defendant's registered list of services) determining that there was no likelihood of confusion between the respective marks. See **Exhibit L**.  The decision was rendered on March 5, 2018.

32.   Plaintiff asserts that there is a clear and present likelihood of confusion between Plaintiff's Mark and the Allegedly Infringing Mark.  Plaintiff believes that this likelihood of confusion arises, in part, directly from the observation of Plaintiff, Plaintiff's business, and Plaintiff's mark by Defendant's representative J. Green.  Plaintiff alleges that there is a possibility of fraud in the Defendant's filing of its application for registration of the Allegedly Infringing Mark with specific knowledge that Plaintiff was the first user of the substantially similar Plaintiff's Mark for the same services. Plaintiff further asserts that, notwithstanding the possibility of such a direct cause of the similarity, the marks nevertheless are confusingly similar in sound, appearance and commercial impression.  Note that the only difference in the marks is the addition of "Y" in the

Allegedly Infringing Mark.  In fact the TTAB noted that "[t]he marks differ only by a "Y" which is unlikely to affect the pronunciation."

33.     Even further, the Allegedly Infringing Mark is used in connection with strikingly similar services and goods.  The services offered by Defendant in connection with which the Allegedly Infringing Mark is used, as shown in its website (see ***Exhibit K***, attached hereto and incorporated herein by reference) are similar and arguably identical to some of the services offered by Plaintiff in connection with which Plaintiff's Mark is used.  Moreover, the services are offered through overlapping channels to overlapping classes of users in conditions that do not demand lengthy examination or and a long period of deliberation.

34.     By inference, Defendant now claims a right of control over Plaintiff's Mark as used as a designator of the source of services of Plaintiff (substantially similar to those listed in Defendant's registration), past and present, with the origins of such rights and the efforts to register such use solely for Defendant being possibly fraudulent in their nature.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Federal Trademark Infringement – 15 U.S.C. § 1114)**

35.     Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

36.     Defendant's actions described above and below constitute use in commerce of a reproduction, counterfeit, copy or colorable imitation of Plaintiff's

federally registered trademark, "MOSAEC", in connection with the sale, offering for sale, distribution, or advertising of goods and services on or in connection with which such use, and are likely to cause consumer confusion, deception or mistake as to source, sponsorship, or approval of Defendant's aforesaid goods or services in violation of federal law.

37.   As set forth above, Plaintiff is the registered owner of the "MOSAEC" trademark.

38.   Despite knowledge that Plaintiff is the owner of the "MOSAEC" trademark, Defendant, without authorization from Plaintiff, has used and continues to use the infringing "MOSAYEC" name in connection with Defendant's services and website.

39.   Defendant's unauthorized and willful use of the infringing "MOSAYEC" mark in connection with its services and website is likely to cause confusion and mistake for the public, and is likely to deceive consumers as to the source or origin of Defendant's services and website.

40.   Defendant's unauthorized and willful use of the infringing "MOSAYEC" mark in connection with its services and website has caused, and continues to cause irreparable injury to Plaintiff's brand, business, and goodwill represented by the "MOSAEC" trademark, in an amount that cannot be ascertained, and unless enjoined, will cause further irreparable injury, leaving Plaintiff no adequate remedy at law.

41.   Defendant's acts of trademark infringement are exceptional as Defendant has been aware of Plaintiff's "MOSAEC" mark since at least 2012, and prior to its adoption of the infringing "MOSAYEC" mark. As a result of Defendants exceptional and willful violations, Plaintiff is entitled to treble damages, attorney's fees and costs,

punitive damages and all other damages and relief available at law or in equity, including permanent injunctive relief.

## SECOND CAUSE OF ACTION
### (Federal Unfair Competition – 15 U.S.C. 1125(a))

42.     Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

43.     Defendant's actions described above constitute use in commerce of a word, name or false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation connection, or association of Defendant with Plaintiff or as to the origin, sponsorship, or approval of the goods offered in connection therewith in violation of federal law.

44.     Defendant's willful use of the infringing "MOSAYEC" mark in connection with its services and website constitutes false and deceptive practices and is likely to deceive or confuse consumers as to the source or origin of Defendant's services and website.

45.     Defendant's unauthorized and willful use of the infringing "MOSAYEC" mark in connection with its services and website has caused, and continues to cause irreparable injury to Plaintiff's brand, business, and goodwill represented by the "MOSAEC" trademark, in an amount that cannot be ascertained, and unless enjoined, will cause further irreparable injury, leaving Plaintiff no adequate remedy at law.

46.     Defendant's unfair competition is exceptional as Defendant has been aware of Plaintiff's "MOSAEC" mark since at least 2012, and prior to its adoption of the infringing "MOSAYEC" mark. As a result of Defendants exceptional and willful

16

violations, Plaintiff is entitled to treble damages, attorney's fees and costs, punitive damages and all other damages and relief available at law or in equity, including permanent injunctive relief.

### THIRD CAUSE OF ACTION
### (Common Law Trademark Infringement)

47.     Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

48.     Plaintiff owns all right, title, and interest in and to the "MOSAEC" trademark as aforesaid, including all common law rights in such mark.

49.     The acts set forth above by Defendant constitute trademark infringement in violation of the common law of the State of New York

50.     Defendant intends to continue its willfully infringing acts unless constrained by this Court.

51.     Defendant's actions have caused, and will continue to cause, irreparable harm to Plaintiff's brand, business, and goodwill as represented by the "MOSAEC" mark unless enjoined by this Court.

### FOURTH CAUSE OF ACTION
### (Common Law Unfair Competition)

52.     Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

53.     Defendant's acts described herein constitute unfair competition in violation of the common law of the State of New York.

54.     Defendant intends to continue engaging in unfair competition and its willfully infringing acts unless constrained by this Court.

55.     Defendant's actions have caused, and will continue to cause, irreparable harm to Plaintiff's brand, business, and goodwill as represented by the "MOSAEC" mark unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in its favor as follows:

A.     Declare that Defendant's unauthorized conduct violates Plaintiff's rights under the Lanham Act (15 U.S.C § 1051 et seq.), and the common law of New York and any other applicable state laws;

B.     Immediately cancel the federal registration of Defendant's infringing mark with the United States Patent and Trademark Office as a matter of law;

C.     Immediately and permanently enjoin Defendant, its officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from:

I.     Using the name "MOSAYEC" or any derivative in connection with any services and websites similar to that of Plaintiff;

II.    Using the domain names *mosayec.org or mosayec.com* or any derivative that may encompass the "MOSAYEC" mark and would be confusingly similar to Plaintiff's "MOSAEC" trademark;

III.  Engaging in any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers into the belief that products or services offered or distributed by Defendant are authorized, sponsored, licensed, endorsed, promoted, or condoned by Plaintiff, or are otherwise affiliated with or connected to Plaintiff;

IV.  Otherwise competing unfairly with Plaintiff in any manner;

V.  Aiding any other party in engaging in any acts prohibited by this paragraph; and

VI.  Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint.

D.  Order that Defendant, pursuant to 15 U.S.C. §1116, serve on Plaintiff within thirty (30) days after service on Defendant of the requested mandatory permanent, or preliminary injunction orders, a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction(s).

E.  Order Defendant to disgorge and account to Plaintiff all of Defendant's profits and any damages sustained by Plaintiff arising from Defendant's acts of willful trademark infringement and unfair competition, which are presumed willful under 15 U.S.C. §1117(e) for the purposes of Defendant's Lanham Act violations, and that Plaintiff be awarded the greater of (i) three times Defendant's profits, or (ii) three times any

damages sustained by Plaintiff, under 15 U.S.C. §1117, plus prejudgment interest;

F.   Order Defendant to pay Plaintiff enhanced damages for their oppression, fraud, malice, and gross negligence, whether grounded on proof of actual damages incurred by Plaintiff or on proof of Defendant's unjust enrichment which are presumed willful under 15 U.S.C §1117(e) for the purposes of Defendant's Lanham Act violations;

G.   Award Plaintiff its costs and disbursement incurred in connection with this action, as well as in connection with the proceeding in the USPTO in connection with the previous cancellation proceeding, including all costs, attorneys' fees and expenses, on the ground that this is an exceptional case under 15 U.S.C §1117;

H.   Award Plaintiff such other and further relief as this Court deems just and proper.

JAMES E. CARTY III, P.C.
James E. Carty III, Esq. (JEC1490)
200 Centennial Avenue, Suite 200
Piscataway, New Jersey 08854
Telephone: (732) 424-9000
Facsimile:  (732) 424-0805
Email: counsel@cartylaw.com

Dated: May 3, 2018                    By: s/ James E. Carty III
                                      James E. Carty III, Esq.
                                      Attorneys for Plaintiff
                                      RLP Ventures LLC

**Demand for Jury Trial**

Plaintiff respectfully demands a trial by jury on all issues.

JAMES E. CARTY III, P.C**.**
James E. Carty III, Esq. (JEC1490)
200 Centennial Avenue, Suite 200
Piscataway, New Jersey 08854
Telephone: (732) 424-9000
Facsimile:  (732) 424-0805
Email:  counsel@cartylaw.com

Dated: May 3, 2018                    By: s/ James E. Carty III
                                      James E. Carty III, Esq.
                                      Attorneys for Plaintiff
                                      RLP Ventures LLC