THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

RLP VENTURES LLC.                    )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )
                                     )   Civ. No. 1:18-cv-03988
ALL HANDS INSTRUCTION NFP            )
                                     )
                    Defendant,       )
                                     )

---

**DEFENDANT ALL HANDS INSTRUCTION'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     FACTS ............................................................................................................... 1

III.    LACK OF PERSONAL JURISDICTION ........................................................ 3

    A.     Legal Standard ......................................................................................... 3

        1.     *New York's Long-Arm Statute: Personal Jurisdiction by Acts of a Non-Domiciliary* ...................................................................................... 3

        2.     *The Exercise of Personal Jurisdiction and Federal Due Process* ...................... 4

    B.     This Court Lacks Personal Jurisdiction Over Defendant All Hands ........................ 4

        1.     *N.Y. C.P.L.R. § 302 Does Not Authorize Personal Jurisdiction Over Defendant All Hands* ...................................................................................... 5

        2.     *Exercising Personal Jurisdiction Over Defendant All Hands Instruction Offends Federal Due Process* ...................................................................... 10

IV.     IMPROPER VENUE ....................................................................................... 11

    A.     Legal Standard ....................................................................................... 11

    B.     The Complaint Should be Dismissed for Improper Venue ...................................... 12

        1.     *The Complaint Fails to Establish a* Prima Facie *Case for Venue* .................... 12

        2.     *No Substantial Acts or Omissions Occurred in this District* ............................ 13

    C.     Alternatively, This Action Should be Transferred to the N.D. Illinois .................... 15

        1.     *The N.D. Illinois is a Proper Alternative Forum* ............................................ 15

        2.     *Plaintiff's Choice of Forum and the Locus of Operative Facts* ........................ 16

        3.     *The Convenience of Witnesses* ....................................................................... 17

        4.     *The Location of Relevant Documents and Relative Ease of Access to Sources of Proof* ...................................................................................... 19

        5.     *The Convenience of Parties* ........................................................................... 19

        6.     *The Availability of Process to Compel the Attendance of Unwilling Witnesses* 20

        7.     *The Relative Means of Parties* ....................................................................... 20

        8.     *The Comparative Familiarity of Each District with the Governing Law* .......... 21

        9.     *Judicial Economy and the Interests of Justice* ............................................... 21

V.      NO COMMON LAW UNFAIR COMPETITION ........................................... 22

    A.     Legal Standard ....................................................................................... 22

i

B.    The Complaint Fails to Allege Sufficient Facts to State a Claim for Unfair Competition ........................................................................................ 22

VI.    NO WILLFULNESS ................................................................................................ 24

A.    Legal Standard ............................................................................................. 24

B.    Plaintiff Fails to State a Claim for Willfulness ........................................... 24

VII.   CONCLUSION......................................................................................................... 25

TABLE OF AUTHORITIES

Page(s)

Federal Cases

*AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*,
    326 F. Supp. 2d 525 (S.D.N.Y. 2004)..................................................................17, 19, 21

*Arrow Fastener Co. v. Stanley Works*,
    59 F.3d 384 (2d Cir. 1995)..................................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................22

*Bensusan Rest. Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997)..................................................................................4

*Berman v. Informix Corp.*,
    30 F. Supp. 2d 653 (S.D.N.Y. 1998).................................................................19, 20

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...........................................................................3, 4, 6

*Blossom Growth Partners, LLC v. Link Snacks, Inc.*,
    No. 15 CV 1605, 2015 WL 3930350 (N.D. Ill. June 25, 2015)............................15

*Brockmeyer v. Hearst Corp.*,
    248 F. Supp. 2d 281 (S.D.N.Y. 2003)..............................................................23, 24

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) ..............................................................23

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................................4

*Capitol Records, LLC v. VideoEgg, Inc.*,
    611 F. Supp. 2d 349 (S.D.N.Y. 2009)...........................................................16, 18, 20

*Care, Ltd. v. Mayborn USA, Inc.*,
    898 F. Supp. 2d 634 (S.D.N.Y. 2012).............................................................22

*Citigroup Inc. v. City Holding Co.*,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)..............................................................7, 14

iii

*CYI, Inc. v. Ja-Ru, Inc.*,
  913 F. Supp. 2d 16 (S.D.N.Y. 2012)............................................................11, 12, 16, 17

*D'Anton Jos, S.L. v. Doll Factory, Inc.*,
  937 F. Supp. 320 (S.D.N.Y. 1996) ....................................................................................12

*Detroit Coffee Co., LLC v. Soup for You, LLC*,
  No. 16-cv-9875 (JPO), 2018 WL 941747 (S.D.N.Y. Feb. 16, 2018) ........................12, 13, 14

*DH Servs., LLC v. Positive Impact, Inc.*,
  No. 12-cv-6153(RA), 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) ...............................6, 7, 8, 9

*Dickerson v. Novartis Corp.*,
  315 F.R.D. 18 (S.D.N.Y. 2016) .........................................................................................21

*Emerging Vision, Inc. v. For Eyes Optical Co.*,
  No. 06 CIV. 5823 (DAB), 2009 WL 702243 (S.D.N.Y. Mar. 16, 2009) ...................16, 17, 20

*ESPN, Inc. v. Quiksilver, Inc.*,
  581 F. Supp. 2d 542 (S.D.N.Y. 2008)............................................................................18, 19

*Faur v. Sirius Int'l Ins. Corp.*,
  391 F. Supp. 2d 650 (N.D. Ill. 2005) .................................................................................15

*French Transit, Ltd. v. Modern Coupon Sys., Inc.*,
  858 F. Supp. 22 (S.D.N.Y. 1994) .......................................................................................19

*Girl Scouts of U.S. v. Steir*,
  102 Fed. App'x 217 (2d Cir. 2004)......................................................................................8

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005)...............................................................................................12

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
  325 F. Supp. 2d 282 (S.D.N.Y. 2004).................................................................................16

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945)............................................................................................................4

*IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*,
  No. 14-CV-4355 RJS, 2015 WL 4720293 (S.D.N.Y. Aug. 6, 2015) .....................................19

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011)...........................................................................................................11

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995)...................................................................................................22

*Kwik Goal, Ltd. v. Youth Sports Publ'g Inc.*,
   No. 06 CIV 395(HB), 2006 WL 1489199 (S.D.N.Y. May 3, 2006) ...............................16, 17

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016)...................................................................................23

*Metro. Opera Ass'n, Inc. v. Naxos of Am., Inc.*,
   No. 98 Civ. 7858(DAB), 2000 WL 987265 (S.D.N.Y. July 18, 2000) ...........................13, 14

*Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.*,
   245 F. Supp. 2d 523 (S.D.N.Y. 2003)...................................................................................22

*Sage Realty Corp. v. Barnhart Interests, Ltd.*,
   No. 02 Civ-0725(LAK), 2002 WL 603035 (S.D.N.Y. Apr. 18, 2002)..............................13, 14

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
   193 F. Supp. 3d 245 (S.D.N.Y. 2016)...................................................................................24

*Schuur v. Walt Disney Co.*,
   No. 98 CIV 2212 (LAP), 1998 WL 190321 (S.D.N.Y. Apr. 21, 1998).................................18

*Skrodzki v. Marcello*,
   810 F. Supp. 2d 501 (E.D.N.Y. 2011) ..................................................................................14

*Starr v. Michael Stars, Inc.*,
   No. 5:12-cv-860, 2013 WL 12291517 (N.D.N.Y. Mar. 21, 2013) ...........................................6

*TM Claims Serv. v. KLM Royal Dutch Airlines*,
   143 F. Supp. 2d 402 (S.D.N.Y. 2001)...................................................................................17

*Walden v. Fiore*,
   571 U.S. 277 (2014).....................................................................................................10, 11

*WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.*,
   No. 00 CIV 6558 (RCC), 2001 WL 1246592 (S.D.N.Y. Oct. 18, 2001)...............................21

State Cases

*LaMarca v. Pak-Mor Mfg. Co.*,
   95 N.Y.2d 210 (2000) .........................................................................................................4

*Paterno v. Laser Spine Inst.*,
   24 N.Y.3d 370 (2014) .........................................................................................................4

*Schaadt v. T.W. Kutter, Inc.*,
   564 N.Y.S.2d 865 (N.Y. App. Div. 1991) ..............................................................................9

*SunLight Gen.Capital LLC v. CJS Invs. Inc.,*
   981 N.Y.S.2d 390 (N.Y. App. Div. 2014) ..............................................................9

**Federal Statutes**

15 U.S.C. §§ 1114 & 1125.................................................................................24

28 U.S.C. § 1391 *et seq.*.........................................................................11, 12, 15

28 U.S.C. § 1404(a) ..........................................................................................11, 15

28 U.S.C. § 1406(a) ..........................................................................................11, 15

**State Statutes**

Ill. Comp. Stat. Ann. 5/2-209(a)(1)....................................................................15

N.Y. C.P.L.R. § 302 *et seq.*........................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12 *et seq.*........................................................... *passim*

Defendant All Hands Instruction NFP ("All Hands") respectfully moves this Court for an order dismissing this case for lack of personal jurisdiction and improper venue, or, in the alternative, transferring it to the United States District Court for the Northern District of Illinois ("N.D. Illinois"), pursuant to Rules 12(b)(2) and (3), Fed. R. Civ. P., and 28 U.S.C. §§ 1404(a) and 1406(a).  In the alternative, should this Court find that it has personal jurisdiction over All Hands and that venue is proper, All Hands respectfully moves this Court for an order dismissing all allegations of willfulness and count four of RLP Ventures LLC's ("Plaintiff") Complaint and Jury Demand ("Complaint") for failure to state a claim under Rule 12(b)(6), Fed R. Civ. P.

In filing this Motion, All Hands does not admit any paragraph or allegation of the Complaint, and reserves all of its defenses and responses thereto.

## I.      INTRODUCTION

On May 3, 2018, Plaintiff filed the instant Complaint alleging trademark infringement and unfair competition under Federal law, and trademark infringement and common law unfair competition under New York law.  *See* Compl.  Plaintiff, however, fails to allege sufficient facts plausibly showing that this Court has personal jurisdiction over All Hands or that venue is proper in this District.  In fact, Plaintiff cannot allege in good faith that All Hands conducted business, advertised, derived revenue in, or intentionally targeted New York in any way, because All Hands has not done so.  Finally, despite its conclusory allegations to the contrary, Plaintiff has failed to allege sufficient facts necessary to state a claim for common law unfair competition or for willfulness.  Based on these failures, this case should be dismissed without leave to amend, or, in the alternative, transferred to the N.D. Illinois.

## II.     FACTS

All Hands is an Illinois non-profit corporation, with a principal place of business in Chicago, Illinois.  Declaration of Jerome Green ("Decl.") ¶ 4.   All Hands offers a web-based

platform (the "MOSAYEC® platform") to assist Chicago-based schoolchildren and youth in selecting, planning, and engaging in extracurricular activities in and around Chicago. Decl. ¶ 9. "MOSAYEC®" is an acronym for Multi-Overlay and Strategic Array of Youth Extracurriculars. This phrase was conceived in 2012 by Jerome Green, All Hands' founder, Executive Director, Director, and President. Decl. ¶ 8. Mr. Green is a full-time 3rd through 5th grade school teacher at Carter G. Woodson Elementary School in Chicago. The MOSAYEC® platform, launched on September 13, 2014, bears All Hands' registered trademark "MOSAYEC," Trademark No. 4,770,195 ("MOSAYEC®"), registered July 7, 2015. Decl. ¶¶ 7, 12; Compl., Ex. L, *1. All Hands does not and has never sold or offered for sale any products or services through the MOSAYEC® platform. Decl. ¶ 13.

The MOSAYEC® website allowed children and youth to create an account by providing personal information. Decl. ¶ 14. Apart from user registration, the MOSAYEC® website was informational, describing MOSAYEC®'s mission and the MOSAYEC® platform. Decl. ¶ 15. All Hands did not sell goods or services through its website, did not host any advertisements, and did not allow for direct donations. Decl. ¶¶ 13, 15, 19. The MOSAYEC® website is not currently functional. Decl. ¶ 20. All Hands also separately maintained a Facebook page for the MOSAYEC® platform (https://www.facebook.com/mosayec). It did not sell goods or services through its Facebook page and did not host any advertisements there. Decl. ¶ 23.

On December 28, 2015, RLP filed a petition to cancel the registration of the MOSAYEC® mark at the Trademark Trial and Appeals Board ("TTAB"), alleging that the mark was confusingly similar to RLP's MOSAEC mark. Compl.,¶ 30; Compl., Ex. L. *1-2. After fulsome discovery, the TTAB issued a final decision denying the cancellation petition, holding

that "there is no likelihood of confusion" between the marks.     Compl., Ex. L. *12-13.
Following the TTAB's decision, on May 3, 2018, RLP filed the Complaint in this action.

## III.   LACK OF PERSONAL JURISDICTION

### A.   Legal Standard

In New York, determining whether personal jurisdiction applies is a two-step inquiry.
*See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).  The Court must determine
first if jurisdiction exists under New York's long-arm statute, and second, if the exercise of
jurisdiction is consistent with federal due process.  *Id*. In fact, "New York decisions, thus [. . .]
tend to conflate the long-arm statutory and constitutional analyses by focusing on the
constitutional standard: whether the defendant's conduct constitutes 'purposeful[] avail[ment]'
'of the privilege of conducting activities within the forum State, thus invoking the benefits and
protections of its laws.'"  *Id*. at 247 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

### 1.   *New York's Long-Arm Statute: Personal Jurisdiction by Acts of a Non-Domiciliary*

New York's Long Arm Statute, N.Y. C.P.L.R. § 302, allows a New York court to
exercise personal jurisdiction over any non-domiciliary who:

(1) transacts any business within the state or contracts anywhere to supply goods or
services in the state; or

(2) commits a tortious act within the state [. . .]; or

(3) commits a tortious act without the state causing injury to person or property within
the state [. . .] if he

(i) regularly does or solicits business, or engages in any other persistent course of
conduct, or derives substantial revenue from goods used or consumed or services
rendered in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state
and derives substantial revenue from interstate or international commerce; or

(4) owns, uses or possesses any real property situated within the state.

3

N.Y. C.P.L.R. § 302.

For element (1), "New York courts define 'transact[ing] business' as *purposeful* activity "'by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State….'" *Best Van Lines*, 490 F.3d at 246.   Furthermore, "[p]assive websites, . . . which merely impart information without permitting a business transaction, are generally insufficient to establish personal jurisdiction." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014).  Under element (2), the Long Arm statute "reaches only tortious acts performed by a defendant who was *physically* present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997) (emphasis added).  Element (3) requires "[f]irst, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).  And Element (4) requires ownership of personal property within the State of New York.

### 2. *The Exercise of Personal Jurisdiction and Federal Due Process*

Due process requires that the Defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  The critical question is whether "the defendant purposefully avails itself of the privilege of conducting activities within the forum State. . .." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

### B. This Court Lacks Personal Jurisdiction Over Defendant All Hands

This Court lacks personal jurisdiction over defendant All Hands, a resident of Chicago, Illinois.  Defendant has not purposefully conducted business within the state of New York, nor

has it provided goods or services within the State.  It has not advertised or solicited business here, nor derived any revenue from goods used or consumed or services rendered in the state.  It has no reasonable expectation to submit to legal consequences within the state, and neither uses nor possesses any real property here.  All Hands' passive informational website, on which no business transactions occur, cannot be used to submit the company to suit in New York.  As discussed below, subjecting defendant All Hands to jurisdiction in this state would violate New York's Long Arm statute and offend constitutional due process.

### 1.    *N.Y. C.P.L.R. § 302 Does Not Authorize Personal Jurisdiction Over Defendant All Hands*

This Court does not have personal jurisdiction over defendant All Hands under its Long Arm statute.  All Hands' principal place of business is located at 445 East 42nd Street, Chicago, IL 60653, making it indisputably a non-domiciliary of New York.  Therefore, New York's personal jurisdiction over All Hands is evaluated under N.Y. C.P.L.R. § 302(a).  But its passive, informational website and locally targeted activities do not subject it to personal jurisdiction here.

### (a)    **There is No Personal Jurisdiction Under § 302(a)(1)**

Neither All Hands' passive website nor its Facebook page constitutes "transact[ing] business" in the state of the New York under § 302(a)(1).  All Hands' website (which is currently offline) was and is purely informational, describing MOSAYEC®'s mission and how the MOSAYEC® platform works.  Decl. ¶¶ 13-15.  The website sells neither products nor services. Decl. ¶ 13.  The website's minimal interactive content allows for user registration alone.  Decl. ¶ 14.   The MOSAYEC® platform has had approximately 12 registered users—all students from the Chicago and Arlington Heights, IL areas who attended the MOSAYEC® platform's opening on September 13, 2014.  Decl. ¶¶ 16-17.  That someone in New York could access the website is insufficient to confer jurisdiction—once on the site, he or she cannot purchase any products or

services through it.  *Starr v. Michael Stars, Inc.*, No. 5:12-cv-860 (NAM/ATB), 2013 WL 12291517, at *2 (N.D.N.Y. Mar. 21, 2013) ("[A]n out-of-state . . . website accessible in New York—even one from which internet users can purchase products to be shipped into the state—is insufficient to confer [§] 301 jurisdiction unless the website is 'purposefully directed towards' the state.").  Visitors cannot make donations through the MOSAYEC® website.  Decl. ¶ 15.

The MOSAYEC® Facebook page, which merely promotes the MOSAYEC® platform, similarly does not constitute "transact[ing] business" in New York.  Indeed, courts have found that promoting events through a website or other social media platform (*e.g*., Facebook) is insufficient to confer jurisdiction under §302(a)(1).  *DH Servs., LLC v. Positive Impact, Inc.*, No. 12-cv-6153(RA), 2014 WL 496875, *4 (S.D.N.Y. Feb. 5, 2014) (finding that advertisements for fundraising events on Facebook did not constitute "transacting business").

All Hands did run an "Indiegogo" campaign for the MOSAYEC® platform in 2014, through which it raised approximately $383 USD.  Decl. ¶ 25.  All of this money was donated from individuals in Illinois or, with respect to three donations, totaling $89 USD, by anonymous donors.  Decl. ¶ 25.  However, even receiving donations through a website does not constitute "transacting business" under §302(a)(1).  *See Best Van Lines*, 490 F.3d at 254 (2d Cir. 2007); *see also DH Servs.*, 2014 WL 496875, at *7.  And, courts have cautioned that extending personal jurisdiction based on "essentially *de minimis* contributions made from a website accessible in any jurisdiction," would create serious due process issues, particularly for non-profit organizations, like All Hands. *See DH Servs.*, 2014 WL 496874, at *8.

### (b)  There is No Personal Jurisdiction Under §302(a)(2)

There is no personal jurisdiction over All Hands under § 302(a)(2) because no alleged tort occurred in New York state.  "[I]n the case of web sites displaying [allegedly] infringing marks the tort is deemed to be committed where the web site is created and/or maintained."

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000); *see also DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153(RA), 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014). In this case, the alleged tortious action did not take place in New York, as the MOSAYEC® website was not maintained or created in the state of New York. Rather, it was created and maintained by Highgate Creative of Wheaton, Illinois. Decl. ¶ 11.

Even in the case of the alleged unfair competition, any purposeful competition by All Hands and the MOSAYEC® platform occurred in Illinois—All Hands' business is extremely locally oriented, focusing exclusively on students in the Chicago area. Indeed, in a cancellation proceeding initiated by Plaintiff at the TTAB involving the same MOSAYEC® mark, the TTAB found that Plaintiff had not been able to show that "the services [provided by RLP and All Hands] are related or that the channels of trade will overlap." Compl., Ex. L, *11. Thus, there is no personal jurisdiction over All Hands under § 302(a)(2).

### (c)  There is No Personal Jurisdiction Under §302(a)(3)

Plaintiff has alleged that defendant All Hands has "caused injury to Plaintiff and its property in the State of New York." Compl., ¶6. Even if Plaintiff's allegations are taken as true, this is not sufficient to confer personal jurisdiction over All Hands under § 302(a)(3). All Hands does not "(i) regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state," nor does it "(ii) expect[] or should [it] reasonably expect [any] act to have consequences in the state and derive[] substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(i)-(ii). Nor does Plaintiff allege as much.

(i)     **All Hands Does Not Regularly Do or Solicit Business or Derive Substantial Revenue from Goods or Services in New York State**

All Hands does not regularly do or solicit business in New York, nor does it derive substantial—or any—revenue from goods or services sold, used, or consumed in New York. As discussed above, merely operating a passive website does not constitute regularly doing business for the purposes of § 302. The MOSAYEC® website is purely informational, has approximately 12 registered users—all from the immediate Chicago and Arlington Heights area--and is directed to local schoolchildren and their extracurricular activities. Decl. ¶¶ 15-16. It does not sell goods nor services, nor does it advertise to or solicit business from New York. Decl. ¶¶ 13, 29.

Operation of the passive MOSAYEC® platform does not confer jurisdiction under 302(a)(3)(i). "That individuals in New York can continuously access—and, in a limited way, interact with—Defendant's website is insufficient to establish §302(a)(3)(i) jurisdiction." *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153(RA), 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) "[T]he mere fact that [plaintiffs'] website, which invites only limited interactive content, is continuously accessible to New York residents does not establish the sort of persistent course of conduct in the state fairly to require [plaintiffs] to answer in New York for their out-of-state actions in maintaining the website." *Girl Scouts of U.S. v. Steir*, 102 Fed. App'x 217, 220 (2d Cir. 2004).

In addition, All Hands does not generate *any* revenue in or from New York. Decl. ¶ 26; *see DH Servs., LLC*, 2014 WL 496875, at *12 (finding no substantial revenue when 2% of Defendant's donations and funding came from New-York based entities). To date, All Hands has generated approximately $3500 in total. Decl. ¶ 27. None of that revenue was generated in New York or from New York residents. Decl. ¶ 27. In short, All Hands is not subject to personal jurisdiction under §302(a)(3)(i).

8

### (ii)  All Hands Does Not Reasonably Expect to Submit to Consequences of Any Acts in New York State

All Hands could not reasonably expect its local activities in Chicago to have consequences in New York, and All Hands generates no revenue from interstate or international commerce.  It is thus not subject to personal jurisdiction under §302(a)(3)(ii).

"[F]oreseeability must be coupled with evidence of a *purposeful New York affiliation*, for example, a discernible effort to directly or indirectly serve the New York market." *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866 (N.Y. App. Div. 1991) (emphasis added).  As previously discussed, All Hands is a small, Chicago nonprofit directed to providing a platform for local schoolchildren to document and record participation in extracurricular activities.  With the possible exception of approximately $89 dollars donated anonymously through an Indiegogo campaign, none of the funds it has received have been from New York residents.  Decl. ¶¶ 25, 27. "Defendant's use of the [allegedly infringing] mark on its website cannot sustain personal jurisdiction, because Plaintiff has not shown that Defendant expected, or could reasonably have expected, consequences in New York." *DH Servs.,* 2014 WL 496875, at *14.  The MOSAYEC® platform is Chicago-focused—nothing in All Hands' business or operations indicates that All Hands could reasonably expect to submit to consequences for its activities in New York.

Finally, "[p]laintiff cannot establish personal jurisdiction, pursuant to CLPR 302(a)(3)(ii), in the absence of evidence that these defendants 'derive[] substantial revenue from interstate or international commerce.'" *SunLight Gen.Capital LLC v. CJS Invs. Inc.*, 981 N.Y.S.2d 390, 391 (N.Y. App. Div. 2014).  Plaintiffs did not, and cannot, show any evidence that All Hands derives *any* revenue from interstate or international commerce.  It has not.  Decl. ¶ 27.  As discussed above, none of the approximately $3500 that All Hands has generated is from New York.  Decl. ¶ 27.

### (d)    There is No Personal Jurisdiction Under § 302(a)(4)

Defendant All Hands does not own or use any real property in New York State.  Decl. ¶ 30.  There is, therefore, no personal jurisdiction over All Hands under N.Y. C.P.L.R. § 302(a)(4).  Because no jurisdiction exists over defendant All Hands under New York's long-arm statute, the first prong of the personal jurisdiction inquiry is not met.

### 2.    *Exercising Personal Jurisdiction Over Defendant All Hands Instruction Offends Federal Due Process*

Not only is jurisdiction improper under New York's Long Arm statute, but subjecting All Hands to jurisdiction in New York State would violate constitutional due process because All Hands does not have the "minimum contacts" with New York necessary to confer jurisdiction.

Despite RLP's conclusory and unsupported statements in its Complaint (¶6), All Hands has *no* contacts and directs *no* activity to the state of New York.  It does not advertise or solicit business in New York.  Decl. ¶ 28.  As a very small Illinois nonprofit focused on the extracurricular activities of local Chicago-area children, none of All Hands' activities occur in or are directed toward New York.  Decl. ¶ 29.  The only registered users of the MOSAYEC® website are local Chicago area individuals.  Decl. ¶ 17.  All Hands' funding has come from local contributions or travel stipends unrelated to New York.  Decl. ¶ 27.  All but one of All Hands' board members are from Illinois and, in the context of All Hands and the MOSAYEC® platform, neither Mr. Green nor anyone associated with the MOSAYEC® platform has ever "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to [New York]. Decl. ¶¶ 31, 35-36.  In short, when viewed through the proper lens—whether the defendant's actions connect him to the forum—petitioner formed no jurisdictionally relevant contacts with [New York.]" *Walden v. Fiore*, 571 U.S. 277, 289 (2014).  Even if taken as true, in the context of

a motion to dismiss, "mere injury to a forum resident is not a sufficient connection to the forum." *Id*. at 278.

All Hands has not purposefully directed any conduct to New York. While its website is accessible from within New York, All Hands does not target schoolchildren or plan events in New York, does not advertise there, and has no users in the forum state. The website is purely informational; the minimal interactive content is limited to user registration. There are no goods or services offered for sale, in New York or otherwise. For sufficient contacts, All Hands must target New York *specifically*, and not simply the United States as a whole, as the website arguably does. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011).

For the foregoing reasons, neither prong of the test for personal jurisdiction are met; All Hands is not subject to personal jurisdiction in New York State.

## IV.    IMPROPER VENUE

### A.    Legal Standard

Venue is proper under 28 U.S.C. § 1391(b) only if (1) the defendant resides in the district, (2) "a substantial part of the events or omissions giving rise to the claim occurred" within the district, or (3) there is no other proper district and the defendant is subject to the court's personal jurisdiction. If venue is improper, the court must dismiss the case or transfer it to a district in which venue is proper. 28 U.S.C. § 1406(a).

Whether to transfer involves determining whether: (1) the action could have been brought in the proposed district, and (2) transfer is warranted for the convenience of the parties and witnesses, in the interests of justice. *See* 28 U.S.C. § 1404(a); *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012). In making this evaluation, courts consider: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of

11

operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties; (8) the comparative familiarity of each district with the governing law; and (9) judicial economic and the interests of justice."  *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012).

### B.      The Complaint Should be Dismissed for Improper Venue

Even if this court could exercise personal jurisdiction over All Hands, and it should not, the case should be dismissed for improper venue as no "substantial part of the events or omissions giving rise to the claim" occurred within the Southern District of New York.  *See* 28 U.S.C. § 1391(b)(2).  The venue statute is construed strictly, requiring that "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district."  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis added).  The burden is on the plaintiff to establish proper venue.  *Id.* at 355.  Thus, for trademark infringement actions, the plaintiff must show "either substantial sales of the infringing product in the district or intentional targeting of the infringing product into the district."  *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-cv-9875 (JPO), 2018 WL 941747, at *2 (S.D.N.Y. Feb. 16, 2018); *see also D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320, 321-22 (S.D.N.Y. 1996).  Because Plaintiff has not, and cannot, do so, this case should be dismissed.

### 1.      *The Complaint Fails to Establish a* **Prima Facie** *Case for Venue*

Plaintiff has failed to allege any facts establishing that venue is proper in this District, alleging only that "Defendant has advertised and solicited business in the State of New York and this District through its website and promotional activities bearing the infringing mark."  Compl. ¶ 6.  This fails to establish a *prima facie* case for proper venue, as there is no allegation of any sales in the District at all, nor any allegation that the District was *intentionally targeted*.  The mere conclusory allegation that All Hands "advertises and solicits business" through a "website"

and unnamed "promotional activities" is insufficient to establish a material act or omission in the District. *See Sage Realty Corp. v. Barnhart Interests, Ltd.*, No. 02 Civ-0725(LAK), 2002 WL 603035, at *2 (S.D.N.Y. Apr. 18, 2002) (finding that the plaintiff had failed to allege facts sufficient to support venue in a trademark infringement case where the only allegation was "using the Internet to post information about and the locations of their businesses.").

## 2.      *No Substantial Acts or Omissions Occurred in this District*

Plaintiff cannot cure its deficient pleadings through affidavits or amendment because no activity giving rise to Plaintiff's claims occurred in the S.D.N.Y.  First, there are no "substantial sales" in this District.  All Hands does not sell *any* products or services *anywhere*, nor does All Hands provide any services in this District whatsoever.  Decl. ¶¶ 13, 23, 26.  In light of this, Plaintiff cannot allege any facts that would establish that "substantial sales" have been made in this District.

Second, All Hands has never "intentionally targeted" this District.  All Hands has no users who are residents of this District, has never contracted with any resident of this District, has never sent any physical promotional materials to this District, has never generated revenue in this District, and has never used its mark physically in this District.  Decl. ¶¶ 26-29, 35-36. Plaintiff does not, and cannot, make any allegations otherwise.  *See* Compl. ¶¶ 28-29.  The only way a New York resident can even come into contact with All Hands' mark is through its website or Facebook page. And "[c]reating a website, like placing a product in to the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state."  *Metro. Opera Ass'n, Inc. v. Naxos of Am., Inc.*, No. 98 Civ. 7858(DAB), 2000 WL 987265, at *4 (S.D.N.Y. July 18, 2000); *see also Detroit Coffee Co.*, 2018 WL 941747, at *4 ("[A] website alone does not automatically demonstrate product targeting to every judicial venue.").  All Hands' website was designed in Wheaton,

13

Illinois and hosted on servers in Los Angeles, California.  Decl. ¶ 11; *see Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) (trademark infringement is committed where the website is created or maintained).  Thus, All Hands' creation of its website does not constitute intentional targeting of this District.  All Hands's creation of its Facebook page—a website controlled and maintained by a third-party—occurred in Illinois, and is even further removed from activity that would constitute intentional targeting.  *See Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 517 (E.D.N.Y. 2011) (noting that advertisements, and even sales, on third-party websites do not usually constitute purposeful conduct).

Further, All Hands' website is "passive" and offers no way for residents in this District to interact with it.  All Hands' website and Facebook page merely provide information about its mission and programs for Chicago-area students, the exact type of "passive Internet activity" that *Sage Realty* and *Metropolitan Opera* found to be insufficient to establish venue.  *See Sage Realty*, 2002 WL 603035, at *2 (venue improper when website "post[ed] information about and the locations of their businesses"); *Metro. Opera*, 2000 WL 987264, at *2 (venue improper when site was "an information and promotional web page that contain[ed] an order form only to assist prospective consumers").  Moreover, for venue, even evidence that New York residents interacted with a website is insufficient to establish venue absent evidence of intentional targeting to the District.  *See Detroit Coffee*, 2018 WL 941747, at *4 (finding venue improper where Defendants' website allowed users to order coffee to be shipped to any state, including New York, but did not directly target the Southern District of New York).  Here, All Hands' website is only minimally interactive: no products or services can be bought on the site and no donations are solicited.  Decl. ¶ 15.  Finally, while All Hands' Indiegogo page promoted its

Chicago-based community activities, it received no donations from New York (with the possible exception of $89 received anonymously). *Id.* ¶ 25.

Because All Hands does not use the mark in or target this District, Plaintiff cannot allege facts sufficient to establish that a "substantial part of the events or omissions giving rise to the claim" occurred within the District. *See* 28 U.S.C. § 1391(b)(2). Thus, venue in this District is improper and this case should be dismissed pursuant to 28 U.S.C. § 1406(a) without leave to amend.

### C.   Alternatively, This Action Should be Transferred to the N.D. Illinois

In the alternative, should the Court determine not to dismiss this case entirely (respectfully, it should), All Hands requests that this Court transfer the case to the N.D. Illinois. *See* 28 U.S.C. § 1404(a) ("[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"). This action has minimal connection to this forum and, as set forth below, at minimum, transfer to the N.D. Illinois is warranted.

#### 1.   *The N.D. Illinois is a Proper Alternative Forum*

The N.D. Illinois may exercise personal jurisdiction over All Hands, because All Hands is based in Chicago and conducts business within the state[1]. Decl. ¶¶ 4, 17. Because All Hands is subject to personal jurisdiction in the N.D. Illinois, venue is proper there. See 28 U.S.C. § 1391(a)(1), (c); *See also Blossom Growth Partners, LLC v. Link Snacks, Inc.*, No. 15 CV 1605, 2015 WL 3930350, at *1 (N.D. Ill. June 25, 2015). Therefore, this action could have been brought in the N.D. Illinois.

---

[1] The Illinois long-arm statute permits Illinois courts to exercise personal jurisdiction over defendants who engage in the transaction of business within the state. 735 Ill. Comp. Stat. Ann. 5/2-209(a)(1); *see also Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 654 (N.D. Ill. 2005).

### 2.     *Plaintiff's Choice of Forum and the Locus of Operative Facts*

The locus of operative facts is a "primary factor in determining whether to transfer venue." *CYI, Inc.*, 913 F. Supp. 2d at 19.  Indeed, Plaintiff's choice of forum is "given less weight where the case's operative facts have little connection with the chosen forum."  *Emerging Vision, Inc. v. For Eyes Optical Co.*, No. 06 CIV. 5823 (DAB), 2009 WL 702243, at *4 (S.D.N.Y. Mar. 16, 2009); *see also Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009) ("[T]he emphasis placed by a court on this choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum.") (internal quotation marks and citation omitted).  Here, the events supporting Plaintiff's allegations occurred in Chicago and the immediately surrounding area, and thus, this Court should accord little deference to Plaintiff's choice of forum.

Even if All Hands' website is accessible from within New York, All Hands "lacks material or significant contacts with the forum state." *Kwik Goal, Ltd. v. Youth Sports Publ'g Inc.*, No. 06 CIV. 395(HB), 2006 WL 1489199, at *2 (S.D.N.Y. May 3, 2006).  Here, the locus of operative facts is in the N.D. Illinois because All Hands' MOSAYEC® mark, present on its website and Facebook page, was conceived of and used there, and All Hands conducts its activities exclusively in Illinois.  Decl. ¶¶ 4, 8, 10-11, 17.  Besides the mark's appearance on All Hands' passive website and Facebook page, Plaintiff can allege no facts supporting any allegation that All Hands used its mark in New York.

First, this action has no connection to this District because there was no "sale" of any kind in New York.  While even small in-district sales are insufficient to justify a finding that the locus of operative facts lies in the forum (*CYI, Inc.*, 913 F. Supp. 2d at 19-21), All Hands has generated *no* revenue in New York (Decl. ¶ 27), and has not used its mark to provide goods or services in New York. This factor, thus, favors transfer. *See CYI,* 913 F. Supp. 2d at 21; *Herbert*

16

*Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 289, 291 (S.D.N.Y. 2004). Indeed, RLP cannot allege in good faith that All Hands used its mark in the sale of either goods or services in New York.  Decl. ¶¶ 13, 26.

Second, the center of gravity of this litigation lies, if anywhere, in the N.D. Illinois, where the conception and use of the MOSAYEC® mark took place.  "The operative facts in infringement cases usually relate to the design, development and production of an infringing product." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004) (the factor weighs in favor of transfer, because the allegedly infringing product was designed and developed in California); *see also CYI, Inc.,* 913 F. Supp. 2d at 22. Here, All Hands' mark was conceived in Illinois, and All Hands' allegedly infringing website and Facebook page were created in Illinois.  Decl. ¶¶ 11, 22.  Thus, the location of operative facts is in Illinois.  *See Kwik Goal, Ltd. v. Youth Sports Publ'g Inc.*, No. 06 CIV. 395(HB), 2006 WL 1489199, at *3 (S.D.N.Y. May 3, 2006).   The MOSAYEC® platform is designed to connect local Chicago schoolchildren with Chicago- and Illinois-based extracurricular activities.  Decl. ¶ 10.   Because the MOSAYEC® platform is so locally focused, any alleged instance of confusion would come exclusively from the area surrounding Chicago, and thus, the center of gravity of this action is in the N.D. Illinois.  *Emerging Vision,* 2009 WL 702243, at *4 (finding the locus of operative facts in the transferee district, because the trademark infringement claim "will necessarily rely heavily on alleged instances of confusion, most of all of which would have occurred in the geographical area of [the transferee district]").

### 3.     *The Convenience of Witnesses*

The convenience of the witnesses favors transfer of the action to the N.D. Illinois. "When weighing [this factor], courts must consider the materiality, nature and quality of each witness, not merely the number of witnesses in each district." *TM Claims Serv. v. KLM Royal*

17

*Dutch Airlines*, 143 F. Supp. 2d 402, 406 (S.D.N.Y. 2001).   In a trademark infringement action, "the most critical witnesses may be 'those officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products.'" *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008); *see also*, *Capitol Records,* 611 F. Supp. 2d at 367 (favoring transfer where the employees in the transferee district are "more likely to provide testimony material to the outcome of this case.").

Jerome Green, All Hands' founder, along with All Hands' board members and consultants, are likely to provide material testimony relating to the conception, registration, mission, promotion, and use of the mark. *See Capitol Records*, 611 F. Supp. 2d at 367. ("[T]he bulk of material testimony on the question of liability will be provided by those responsible for the creation, design, and maintenance of the websites and technology at the center of this dispute").   All but one of the material witnesses,[2] as well as the MOSAYEC® platform and website itself, are located in Illinois.[3]   "Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *Schuur v. Walt Disney Co.*, No. 98 CIV. 2212 (LAP), 1998 WL 190321, at *2 (S.D.N.Y. Apr. 21, 1998).   As explained above, the events allegedly giving rise to Plaintiff's claims occurred in Illinois, and the critical witnesses are located there.   Accordingly, this factor favors All Hands.

---

[2] In addition to Mr. Green, there are 5 current and former board members who might offer relevant testimony: Ayana Herron, Jennifer Green, Jill Goodmanson, Debbie Morrison, and John Allison.  Decl. ¶¶ 31-32.  Each resides in Illinois, besides Debbie Morrison, who moved from Chicago, IL to Minneapolis, MN in 2017.  *Id.*  There are 5 potential non-party witnesses based in Illinois who may offer relevant testimony: Jay Beaton, Anisha Patel, Bina Patel, Brad Cathey, and Sean Zellmer. Decl. ¶ 33.

[3] As stated above, because the MOSAYEC® website was hosted on a server in Los Angeles, CA, there may be some documents related to the website located in California.

### 4. *The Location of Relevant Documents and Relative Ease of Access to Sources of Proof*

This factor favors transfer, because documents and evidence relating to the development and use of MOSAYEC® mark is located within the N.D. Illinois. *See Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 658 (S.D.N.Y. 1998) ("The relative convenience and lower cost of a trial … where the documents are located … strongly weighs in favor of transfer[].''). Any documents and communications related to All Hands' activities with respect to the MOSAYEC® mark, such as conception, development, and accounting, are located at All Hands' office in Chicago, Illinois or with Highgate Creative in Wheaton, Illinois.  Decl. ¶ 34.  The majority of documents are likely to come from All Hands, the accused infringer, because "[i]n infringement cases, the bulk of the relevant evidence usually comes from the accused infringer" *AEC One Stop Grp.,* 326 F. Supp. 2d at 530.

### 5. *The Convenience of Parties*

The convenience of parties favors transfer because of the location of the majority of witnesses in this case.  Decl. ¶¶ 5, 31-33.  Convenience of the party witnesses is connected in turn to the convenience of parties.  *ESPN,* 581 F. Supp. 2d at 549–50.  Here, as discussed above, All Hands' board members, including founder Jerome Green, would provide the bulk of relevant testimony in this case.  Decl. ¶¶ 3, 5, 31-32.  Thus, for the convenience of key party witnesses with knowledge of material facts of this action, this factor favors transfer.  *See IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*, No. 14-CV-4355 RJS, 2015 WL 4720293, at *3 (S.D.N.Y. Aug. 6, 2015).  Furthermore, the N.D. Illinois will be the more convenient forum for Jerome Green, the Executive Director, Director, and President of All Hands (the primary witness in this case) who is employed as a Chicago-area teacher and also maintains All Hands, his small Chicago nonprofit, at the same time. *See French Transit, Ltd. v. Modern Coupon Sys., Inc.*, 858 F. Supp.

22, 27 (S.D.N.Y. 1994) (finding the factor in favor of transfer, because the defendant must attend to his small business in Arizona).

### 6. *The Availability of Process to Compel the Attendance of Unwilling Witnesses*

The availability of process to compel the attendance of unwilling witnesses weighs in favor of transfer, because the bulk of material witnesses are located in Illinois.  Decl. ¶¶ 3, 5, 31-33.  Non-party witnesses are not subject to the subpoena power of a court located more than 100 miles from where they reside.  *See Capitol Records*, 611 F.Supp.2d at 366-67 (non-officer employees located in California to be not subject to the subpoena power of the New York court). All but one of the likely non-party witnesses in this case, discussed above, are located in Illinois, all of which are well outside the 100-mile subpoena radius of this court.  Decl. ¶¶ 3, 5, 31-33. As discussed above, non-party witnesses for All Hands are based in Illinois, and any witness testimony on alleged instances of confusion are likely residents of the Chicago area.  Therefore, this factor supports transferring the case to the N.D. Illinois.  *See Emerging Vision,* 2009 WL 702243, at *4 (noting that the trademark infringement claim "will necessarily rely heavily on alleged instances of confusion, most of all of which would have occurred in the geographical area of [the transferee district].").

### 7. *The Relative Means of Parties*

Plaintiff has the resources to litigate the case in Illinois, evidenced by the fact that it has filed 37 TTAB proceedings in the last 3 years, 35 of which involving Plaintiff's MOSAEC mark or opposition of marks with the term "mosaic."  Declaration of Kevin Post, Ex A.  Plaintiff is apparently willing and able to expend significant resources to pursue litigation.  *See Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 661 (S.D.N.Y. 1998) (That plaintiff has the resources to try the case in Northern California is evidenced by a number of lawsuits against numerous parties

20

initiated by the plaintiff).   In contrast, All Hands is a small, Chicago-based non-profit organization that has not made a profit since its founding in 2012 (Decl. ¶ 27), and Mr. Green, the primary party witness, is employed as a Chicago-area schoolteacher.  Decl. ¶ 6.  As such, it will be extremely costly for All Hands to incur the expense of traveling to New York for pre-trial proceedings and trial.  The balance of this factor weighs heavily in favor of transfer.

### 8.        *The Comparative Familiarity of Each District with the Governing Law*

Both New York and Illinois courts are fully capable of interpreting federal trademark law. In addition, familiarity with the governing law is generally given little weight in federal courts. *AEC One Stop Grp*., 326 F.Supp.2d at 531("[W]here the issue of federal copyright law is a subject on which both courts are familiar, this factor is neutral.").  Although Plaintiff asserts state law claims, "'[f]ederal courts are deemed capable of applying the substantive law of other states,' and thus this factor is accorded minimal weight."  *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 32 (S.D.N.Y. 2016).  Thus, this factor is neutral.

### 9.        *Judicial Economy and the Interests of Justice*

Transfer to the N.D. Illinois will preserve trial efficiency, because All Hands is filing this motion to transfer in the very early stage of litigation.   "Transfer is appropriate in order to facilitate discovery when: (i) the action is in the early stages of litigation; and (ii) the transferee district is the place where the operative events occurred and where many of the witnesses and documents are located." *WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.*, No. 00 CIV. 6558 (RCC), 2001 WL 1246592, at *6 (S.D.N.Y. Oct. 18, 2001).  All Hands has not yet answered the Complaint, no motions have been heard, and discovery has not yet commenced.   Also, as discussed above, the majority of key witnesses are located in Chicago and the surrounding area.

The interest of justice compels transfer based on the totality of the circumstances.  Here "[t]he material events occurred in Chicago . . . , and have virtually no connection to New York.

21

The overwhelming majority of factors favor transfer." *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.*, 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003) ("The interests of justice are based on the totality of the circumstances.").   As discussed above, the N.D. Illinois is where the conception and use of the MOSAYEC® mark occurred and where the majority of material witnesses are located.   Indeed, apart from Plaintiff's address in New York, this district has no connection to this action.   Thus, transfer is warranted for the convenience of the parties and witnesses and the interest of justice.

## V.   NO COMMON LAW UNFAIR COMPETITION

### A.   Legal Standard

In New York, common law unfair competition is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or deceive purchasers as to the origins of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995).  Thus, to state a claim, a plaintiff "mirror[s] elements of trademark infringement under the Lanham Act," except "a plaintiff asserting an unfair competition claim under New York common law must also show that the defendant acted in bad faith."  *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 643 (S.D.N.Y. 2012); *see Jeffrey Milstein*, 58 F.3d at 34.   A claim must be dismissed under Rule 12(b)(6) if an essential element has not been pled.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.   The Complaint Fails to Allege Sufficient Facts to State a Claim for Unfair Competition

As Plaintiff has failed to allege that All Hands acted in bad faith—a required element of New York's common law unfair competition claim—this claim should be dismissed for failure to state a claim under Fed R. Civ. P. 12(b)(6).  *Jeffrey Milstein*, 58 F.3d at 34.  Bad faith requires showing that "defendants adopted [their] mark with the intention of capitalizing on [the]

plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 298-300 (S.D.N.Y. 2003).   Here, the Complaint alleges no facts supporting any assertion that All Hands adopted its mark in bad faith.

Plaintiff does not—and cannot—allege bad faith.  *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 602 (E.D.N.Y. 2017) (finding an allegation that defendant acted "willfully, wantonly, oppressively, and maliciously, and with the intent to cause confusion, mistake, and to deceive prospective customers" too conclusory to support an inference that defendant acted in bad faith").  At most, the Complaint alleges that All Hands was "aware" of Plaintiff's mark and is "willfully infringing" Plaintiff's mark.  *See* Compl. ¶¶ 20, 54.  However, "awareness of the plaintiff's mark does not mean that [Defendants] acted in bad faith," and an unsupported allegation of "willful" infringement is too conclusory to support an inference of bad faith.  *See Brockmeyer*, 248 F. Supp. 2d at 299; *Bubble Genius*, 239 F. Supp. 3d at 602.  Thus, Plaintiff's claim for common law unfair competition should be dismissed.

Plaintiff should not be allowed to amend its Complaint because it cannot plead facts that would establish that All Hands acted in bad faith.  Here, the USPTO approved the application to register All Hands' mark without reference to Plaintiff's mark, supporting a finding that the defendant did not act in bad faith.  *See Brockmeyer*, 248 F. Supp. 2d at 299 (finding no bad faith when the USPTO registered defendant's mark without any reference to plaintiff's mark); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, at 687 (S.D.N.Y. 2016).  And, even more importantly, concluding a TTAB cancellation proceeding on March 5, 2018, the TTAB found that there was *no likelihood of confusion* between All-Hands' USPTO-registered MOSAYEC® mark and Plaintiff's mark.  Compl., Ex. L. *12-13.  In light of this, All Hands had no reason to believe that the use of its mark was not wholly appropriate.  Where "defendants

23

reasonably concluded that there would be no confusion between [its] mark as it would be used and the plaintiff's use of his mark, a conclusion eventually affirmed by the USPTO," "[t]here is no basis from which to infer any bad faith."  *See Brockmeyer*, 248 F. Supp. 2d at 299.  Indeed, the TTAB expressly held that Plaintiff had failed to provide sufficient evidence of a likelihood of confusion, and so All Hands' conclusion of the same is objectively reasonable.

Therefore, Plaintiff has failed to allege that All Hands acted in bad faith as required by New York common law unfair competition, and so Plaintiff's common law unfair competition claim should be dismissed for failure to state a claim, without leave to amend.

## VI.   NO WILLFULNESS

### A.   Legal Standard

The standard for willfulness under 15 U.S.C. §§ 1114 & 1125 is identical to the standard for bad faith in unfair competition: the *specific intention* of "capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product."  *See Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 281 (S.D.N.Y. 2016); *Brockmeyer*, 248 F. Supp. 2d at 300 (applying same bad faith standard to unfair competition and trademark infringement).  Mere awareness of a plaintiff's mark does not "necessarily give rise to an inference of bad faith."  *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995).

### B.   Plaintiff Fails to State a Claim for Willfulness

The Complaint fails to state a claim for willful federal trademark infringement, federal unfair competition, or common law trademark infringement (Counts I-III).  For the same reasons as above, the USPTO's registration of All Hands's mark and the TTAB's affirmation that there is no likelihood of confusion between All Hands's and Plaintiff's marks precludes any finding of willfulness.  *See supra* Part V(B).  Indeed, Plaintiff's Complaint is devoid of anything other than the conclusory allegation that All Hands had "knowledge" of Plaintiff's mark and that that its use

was "unauthorized and willful."   *See* Compl. ¶¶ 38-40, 44-46, 50.   No pleaded facts support willfulness, and so Plaintiff's claims of willfulness for Counts I-III relating to the Lanham Act and state trademark infringement should be dismissed as well.

## VII.   CONCLUSION

For the foregoing reasons, All Hands respectfully requests that the Court enter an order dismissing this case, or in the alternative, transferring this case to the N.D. Illinois.  If this case is not dismissed or transferred, Plaintiffs' claims of common law unfair competition and willfulness as to Counts I-III should be dismissed.

Dated:  July 30, 2018

/s/ Kevin J. Post_____

Kevin J. Post
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

*Attorneys for Defendant*
*All Hands Instruction NFP*